IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**GARY ADAMS,**
        **Plaintiff**

**v.**                                                                    Civ. Action No.  **4:05cv22**

**DONALD H. RUMSFELD,**
        **Secretary of Defense, et al,**
        **Defendants**

## MEMORANDUM OPINION AND ORDER

Presently before the Court is the United States' Motion for Summary Judgment, on behalf of Defendants Donald H. Rumsfeld and the  Defense Contract Management Agency (DMCA).[1]  For the reasons stated herein, the Defense Contract Management Agency is **DISMISSED** as a defendant in this case, the Motion for Summary Judgment is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE.**

I.        **Background**

        A.        **Procedural Background**

Plaintiff Gary Adams filed this suit *pro se* on April 20, 2005, although he obtained a lawyer, Nathaniel J. Webb, III, who entered an appearance on August 3, 2005.   The United States answered on June 27, 2005.   On August 3, 2005, a 16(b) scheduling conference was held in which attorneys for both parties attended.   On November 2, 2005, the United States filed the instant Motion for Summary Judgment.   Plaintiff did not reply to the Motion, and it became ripe for judicial

---

[1]As explained in Part II <u>infra</u>, the only proper defendant in this case is the head of the agency.

determination on November 17, 2005 pursuant to Local R. Civ. P. 7(F)(1) (E.D.Va. February 15, 2005)(stating that "the opposing party shall file a responsive brief and such supporting documents as are appropriate, within eleven (11) days after service . . . .").

      **B.**    **Facts**

      As noted, Plaintiff has not responded to Defendant's Motion for Summary Judgment.  Under Local R. Civ. P. 56  (E.D. Va. February 15, 2005), when "determining a motion for summary judgment, the Court may assume facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Accordingly, the Court will accept Defendant's undisputed facts for the purposes of this Motion.  See Oglesby v. Ford Motor Co., 2005 WL 1993434, *1 (E. D.Va. 2005).

      Plaintiff is a former employee of the DCMA.   In order to understand the nature of Plaintiff's complaint, the Court notes at the outset there are two disability benefit systems involved in this matter:  the Office of Workers Compensation Program (OWCP) and the Office of Personnel Management (OPM).   Individuals entitled to both systems must choose between one or the other when they retire.   See Def.'s Mem. in Supp. of Mot. for Summ J. at Ex. 21, Driver Decl. ¶ 5.  As shall become apparent, the root of Plaintiff's claim is his contention that the DCMA did not adequately assist him in receiving the OWCP benefits to which he claims to be entitled.  Although peripherally involved, neither OWCP nor OPM are parties to this suit.

      On September 25, 2003, Plaintiff entered into a Settlement Agreement (the "Agreement") with the DCMA in order to resolve his EEOC claims that he had been discriminated and retaliated against based on his physical disability.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at Ex. 3.  Under Section 1 of the Agreement, the relevant obligations of the DCMA to the Plaintiff were as

follows:

- Retroactively promote [Plaintiff] to GS-11, step 10, with sufficient time-in-grade to allow his immediate retirement in that grade at current pay rates;

- Designate [Plaintiff's] position as eligible for voluntary early retirement under the FY 2003 Voluntary Early Retirement Authorities (VERA) so [Plaintiff] may immediately retire;

- Pay [Plaintiff] a Voluntary Separation Incentive Payment (VSIP) of twenty-five thousand dollars ($25,000.00);

- Make a good faith effort to help resolve [Plaintiff's] pending Office of Worker's Compensation Programs (OWCP) claims by funding a personal visit by [Plaintiff] (or his representative) and an agency representative to meet with officials of the OWCP office responsible for processing [Plaintiff's] claims. This meeting will be rescheduled as soon as this Settlement Agreement is executed, and a good faith effort will be made to have the meeting before [Plaintiff] leaves the government rolls. The Agency will fund and attend the meeting even if it occurs after [Plaintiff] leaves the rolls. If OWCP refuses the meeting request, the agency will make a good faith effort to resolve [Plaintiff's] OWCP claims by sending written correspondence and/or speaking to the relevant officials by telephone . . . .

Id.

Plaintiff's claim before this Court involves only Section 1.d of the Agreement, namely that the DCMA breached the Agreement by failing to "sponsor a meeting with the Office of Workers Compensation" and "assist [the Plaintiff] in resolving [his] ongoing issues." Pl.'s Comp. at 1. Stating that his Office of Workers Compensation Program (OWCP) payments had stopped, Plaintiff claims he is owed between $98,000 and $132,000. He explains:

I did not know why the payments stopped and constant requests to Agency officials went unheeded. Upon accepting the Agency's agreement, I could then ask OWC directly why my payments had ceased. I was told the reason was the Agency had stopped submitting the necessary paperwork.

Id. Alleging he was not receiving proper assistance from the DCMA with his OWCP payments,

3

Plaintiff then relates he reinstated his EEOC complaint.  According to Plaintiff, this EEOC complaint was ultimately denied.  Id.

Defendant agrees that, after Plaintiff retired from government service on September 30, 2003, as provided for in the Agreement, "he complained that not all of his OWCP claims had been properly submitted."  Def.'s Mem. in Supp. of Mot. for Summ. J. at 3.  According to Defendant's Undisputed Facts, however, Plaintiff was given appropriate assistance under the Agreement.  Defendant first relates that "Teri Driver, the Defense Logistics Agency Injury Compensation Program Administrator responsible for [Plaintiff's] OWCP claims coordinated with Ray Robinson, Plaintiff's former supervisor to ensure that all claim forms had been properly completed and forwarded to OWCP with appropriate documentation."  Id.  Even though Ms. Driver had believed all claims had been properly forwarded on Plaintiff's behalf, Plaintiff submitted additional claim forms and supporting documentation for various periods from June 30, 2003 through September 30, 2003.  Id. at 3-4.  On November 1, 2003, Ms. Driver forwarded this additional information to the OWCP, "with the agency's reservations about the adequacy of the medical information, and informing OWCP that [Plaintiff] had retired from federal service."  Id. at Ex. 21, Driver Decl. ¶ 6.

In the meantime, while Plaintiff was communicating with Ms. Driver about his OWCP benefits allegedly due, Ms. Driver was copied on a letter to Plaintiff from Mr. Clark Gregg at OWCP on October 14, 2003.  This letter informed Plaintiff that "OWCP had been notified that he was receiving, or entitled to receive retirement benefits from the Office of Personnel Management (OPM), and that he was not entitled to receive both OWCP and OPM benefits at the same time." Id., Driver Decl. ¶ 5.  This letter instructed Plaintiff he would have to elect between OWCP or OPM benefits and included an election form.  Id.  On November 3, 2003, Ms. Driver was copied

on another letter from Mr. Gregg to Plaintiff.   This letter informed that Plaintiff  "had elected to receive benefits provided by OPM under the U.S. Civil Service Retirement Act in lieu of OWCP compensation benefits." Id.  Plaintiff's election form was included as part of that correspondence. Id. at Ex. 7.

On December 5, 2003, Plaintiff emailed Ms. Driver asking for assistance with his final payment from OWCP.  Id. at Ex. 8.   Specifically, he wrote:  "Who can I speak to; without getting my situation and personal information spread about; that could help expedite that final payment?" Id.   Ms. Driver returned his email on the same day, stating "[m]y quality person says the system indicates payment should be set for 12/19/2003."  Id.

On December 11, 2003, before the December 19, 2003 payment, Plaintiff sent an email to Carol Shulenberg, a member of Congresswoman Jo Ann Davis' staff, with a copy to Ms. Driver. Id. at Ex. 9.   In his email, he states he "just learned I could have retired through Workers Compensation.   I would like to see if I can have the benefits and draw backs [sic] of both OPM and OWCP.   Is it possible to switch retirement plans at this point?"  Id.   He did not request a meeting to be held on his behalf of any kind.   Ms. Shulenberg wrote back briefly, stating that he "can go for OWCP disability retirement or disability retirement through OPM. . . . it is your choice – disability retirement with OWCP or OPM."  Id.   Ms. Driver, who had been copied on the message, wrote a lengthy email in response, clarifying some of the information he had been given by Ms. Shulenberg. Id.  In her email to Plaintiff, Ms. Driver wrote:

> . . . you were separated under a Retirement Special Option.   This means that you were approved to retire under the Voluntary Early Retirement Authority (VERA) since you met the age and years in service criteria.   This option also included a Voluntary Separation Incentive Pay (VSIP) of $25,000.

> If you were to change to the OPM program of Disability Retirement you would have to pay back the $25,000 VSIP that was paid to you since a disability retiree has no entitlement to this pay incentive.
>
> Finally, OWCP **IS NOT** a retirement program.  You were not removed (as in terminated) from federal service for the inability to perform the duties of you[r] job and there was nothing (that I am familiar with) that was proposing your removal in writing.  If this had been the issue at that time then there would have been a different approach to the options available to you. . . .

Id.  There is no indication in the record that Plaintiff responded to Ms. Driver's email.

On March 18, 2004, in response to his telephone call, Caroline Howard, a claims examiner with OWCP sent a letter to Plaintiff indicating she had attempted to contact him by telephone but did not reach him.  Id. at Ex. 10.  "She informed him that her office had reviewed his inquiry and had responded to his surgery request via congressional letter.  She advised [Plaintiff] to consult with his attending physician concerning medical treatment plans."  Def.'s Mem. in Supp. of Mot. for Summ. J. at 6.

On April 19, 2004, Ms. Driver informed OWCP, by letter and supporting documents, that, "based on the money paid to [Plaintiff] as part of the settlement agreement, he had received an overpayment from OWCP."  Id. at 6.  "She also informed OWCP that DCMA had agreed to fund a personal visit for [Plaintiff] or his representative along with an agency representative to meet with an OWCP representative to discuss the finalization of his claims."  Id.   She also indicated the DCMA "would still be interested in meeting with the assigned OWCP claims examiner in an effort to resolve claimant's issues."  Id.

On August 24, 2004, apparently in response to Plaintiff's inquiry about switching from OPM to OWCP benefits, OWCP District Director Herman A. Cain sent a letter to Plaintiff.  "Mr. Cain

informed [Plaintiff] that, if he elected to receive OWCP benefits, they would be paid at the partial or loss of wage-earning capacity (LWEC) rate." Id. at 7. Noting Plaintiff's allegation that DCMA had "held CA-7s (claim forms) for periods of intermittent disability," he informed Plaintiff, "however, that OWCP had determined that medical evidence did not support the claimed periods of intermittent disability and those determinations had been affirmed by the Branch of Hearings and Review and the Employees' Compensation Appeals Board." Id. Mr. Cain "invited [Plaintiff] to contact the District Director's staff if he had any questions and provided him with a telephone number." Id.

On September 8, 2004, Plaintiff submitted to OWCP a "Notice of Recurrence claiming additional medical care for his work-related injury." Id. at 7. OWCP Claims Examiner Harry Thomas wrote a letter to Plaintiff on September 30, 2004 informing him that the "evidence on file was insufficient to support that the claimed recurrence was related to his employment" and advised Plaintiff that additional information was necessary. Id. Although it is not in the record, Plaintiff apparently provided such information because, on December 17, 2004, Mr. Thomas informed Plaintiff that the recurrence had been accepted as a continuous condition and that OWCP would pay for his medical treatment. Id. Orthopedic shoes, an AFO (ankle/foot orthotic), and related medical treatment were also authorized. Id. at 7-8. On December 23, 2004, OWCP Claims Examiner Harry Thomas sent a letter to Plaintiff "informing him that two of his claims had been consolidated under one claim number." Id. at 8.

Plaintiff then complained to the DCMA that the agency had breached the Settlement Agreement. On June 10, 2004, the DCMA issued a final decision that it was in compliance with the Agreement. Id. Plaintiff appealed this decision with the EEOC, which affirmed the DCMA's

decision on December 9, 2004.  Id.  On January 18, 2005, the EEOC denied Plaintiff's request for

reconsideration.  Id.


## II.     The Proper Defendants in this Case

Before addressing Defendant's Motion for Summary Judgment, the Court notes at the outset

that only the Secretary of Defense is a proper defendant in this lawsuit.   Plaintiff has named both

the Defense Contract Management Agency (DCMA), which falls under the Department of Defense,

and the Secretary of Defense as defendants in this case.   In relevant part, 42 U.S.C. § 2000e-16(c)

provides:

> . . . . an employee or applicant for employment, if aggrieved by the
> final disposition of his complaint, or by the failure to take final action
> on his complaint, may file a civil action as provided in section 2000e-
> 5 of this title, in which civil action the head of the department,
> agency, or unit, as appropriate, shall be the defendant.

Accordingly, pursuant to this provision, the only proper defendant in this case is the head of the

agency.   The head of the Department of Defense is the Secretary of Defense.  10 U.S.C. § 113(a).

The Court therefore **DISMISSES** the DCMA as a defendant in this case.  Donald Rumsfeld, as

Secretary of Defense, is, however, a proper defendant.


## III.     Analysis

### A.     Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted

where "the pleadings, depositions [and] answers to interrogatories . . . show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, a court views the facts in the light most favorable to the nonmoving party.  United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).  The moving party has the threshold burden of informing the court of the basis of the motion, of establishing that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1339 (4th Cir. 1992).

Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production, not persuasion, shifts to the non-moving party.  Id. at 322-23.  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324.  See also Fed. R. Civ. P. 56(e); Catawba Indian Tribe, 978 F.2d at 1339. When a non-moving party does not respond to a motion for summary judgment,  under Local R. Civ. P. 56  (E.D. Va. February 15, 2005), "the Court may assume facts identified by the moving party in its listing of material facts are admitted."  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . .  against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Therefore, "[w]here . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  Lee, 943 F.2d at 368.

### B.    The Settlement Agreement

The issue in this case is whether or not the DCMA breached the terms and conditions of the Settlement Agreement it entered into with Plaintiff on September 25, 2003.  Plaintiff contends that

the DCMA breached Section 1.d of the Agreement by failing to "sponsor a meeting with the Office of Workers Compensation" and "assist [the Plaintiff] in resolving [his] ongoing issues." Pl.'s Comp. at 1.

Under EEOC Regulation 29 C.F.R. § 1614.504(a), "[a]ny settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties." Settlement agreements are strongly encouraged as they result in the resolution of disputes without litigation. They "should therefore be upheld whenever equitable and policy considerations so permit." Silicon Image, Inc. v. Genesis Microchip, Inc., 271 F. Supp. 2d 840, 846 (E.D.Va. 2003). A settlement agreement is, of course, a contract. "[D]isputes respecting a settlement agreement are resolved according to the principles applicable to contracts generally." Id.

In this case, the contractual language of the Agreement is not at issue. Plaintiff simply claims that the DCMA breached the Agreement by not performing as required under Section 1.d of the Agreement. Plaintiff, however, has not provided the Court with any evidence to support his conclusory assertions that DCMA breached the Agreement by not sponsoring a meeting with the OWCP or by not helping him resolve his claims with the OWCP. Indeed, it appears that the DCMA attempted to help Plaintiff on numerous occasions with his OWCP claims. According to the undisputed facts, Ms. Teri Driver worked with Plaintiff after he retired, forwarding claim forms to the OWCP and providing information to him. She also proposed a meeting with Plaintiff or his representative and OWCP officials responsible for considering his claims. Def.'s Mem. in Supp. of Mot. of Summ. J. at Ex. 3, Driver Decl. ¶10. While OWCP apparently did not respond to this

10

request, see id., neither Ms. Driver nor the DCMA had an obligation to force them to do so.[2]  While

Plaintiff may be unhappy with some of the OWCP's decisions about his benefits, the DCMA did not

guarantee a satisfactory outcome.  All the DCMA was required to do under the Agreement was to

make a "good faith effort" to help Plaintiff resolve his OWCP claims.   As the undisputed facts

demonstrate, see supra, the record is clear that they did.

Moreover, there is no evidence in the record that Plaintiff requested that the DCMA fund a

meeting with the OWCP.   There is also no evidence in the record of any denial by anyone of any

requested meeting.   There is evidence, however, that Ms. Driver, who worked for the DCMA,

requested a meeting with the OWCP, see id., even though there is no evidence that Plaintiff himself

requested that Ms. Driver take this action.  The EEOC found no breach and no bad faith by the

DMCA in its handling of this matter.[3]  This Court, based on the undisputed facts before it, reaches

the same conclusion.   It **FINDS** that the DCMA did not breach the Agreement with Plaintiff in this

case.


IV.   **Conclusion**

Plaintiff is clearly frustrated by bureaucracy.   While understandable, such frustration does

---

[2]As the undisputed facts reveal, the OWCP had substantial contact with Plaintiff.   It does not appear from the record that he was ignored by that agency in any way.

[3]In his complaint to the EEOC regarding this matter, Plaintiff  "alleged that [the DCMA] ignored his request for his time and attendance records from 1995 through September 2003" and he also "contended that the records provided by the agency were insufficient to assist him in filing for four years of lost wages." Id. at Ex. 19 (EEOC Appeal No. 01A44491, Dec. 9, 2004).  As the EEOC pointed out, however, Plaintiffs' complaints in this regard are not covered by the Agreement.   See id. (noting "the terms of the agreement do not obligate the agency to provide complainant with these records").  The EEOC decision also noted that Plaintiff consulted with a lawyer and his union before entering into the Agreement.   See id.

not necessarily mean the DCMA did not perform its obligations as specified under the Agreement. The Court observes that, as part of the Agreement, Plaintiff was retroactively promoted to a GS-11, designated for early retirement, and paid a $25,000 Voluntary Separation Incentive Payment. The undisputed facts reveal several government bureaucrats who tried to resolve Plaintiff's OWCP claim issues or explain to him why they could not be resolved to his exact satisfaction. Plaintiff, although he does not believe he received "good faith" assistance from the DCMA to resolve his OWCP claims, clearly received such assistance. In short, the DCMA did not breach their Agreement with Plaintiff to assist him with his OWCP claims. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** and the case is **DISMISSED WITH PREJUDICE.** In addition, for the reasons explained in Part II supra, the Defense Contract Management Agency is **DISMISSED** as a defendant in this case.

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to all counsel of record and to the Plaintiff.

**IT IS SO ORDERED.**

_____ /s/_____
Robert G. Doumar
UNITED   STATES   DISTRICT   JUDGE

Norfolk, Virginia
December 6, 2005

12